**UNPUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-1579**

_____

JUANITA CROUCH,

        Plaintiff - Appellant,

    v.

SUNCAKES NC, LLC,

        Defendant - Appellee.

_____

Appeal from the United States District Court for the Western District of North Carolina, at Charlotte.  John A. Gibney, Jr., Senior District Judge for the Eastern District of Virginia, sitting by designation.  (3:23-cv-00880-JAG-SCR)

_____

Argued:  December 11, 2025               Decided:  February 23, 2026

_____

Before NIEMEYER, WYNN, and BENJAMIN, Circuit Judges.

_____

Affirmed by unpublished opinion.  Judge Niemeyer wrote the opinion, in which Judge Wynn and Judge Benjamin joined.

_____

Wilson Frank Fong, HENSEL LAW, PLLC, Greensboro, North Carolina, for Appellant. Lori P. Jones, JORDAN PRICE WALL GRAY JONES & CARLTON, LLP, Raleigh, North Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit.

NIEMEYER, Circuit Judge:

Juanita Crouch commenced this action against her former employer, SunCakes NC, LLC ("SunCakes"), alleging sexual harassment, discrimination on the basis of sex, and retaliation — all in violation of Title VII — and failure to pay wages in compliance with the Fair Labor Standards Act ("FLSA"), as well as retaliation under that act.

The district court granted summary judgment to SunCakes, and we affirm.

I

Crouch was employed by SunCakes as a server at an IHOP restaurant in Charlotte, North Carolina. She remained so employed for roughly four months, during which she missed some 26 out of 56 scheduled shifts and was tardy and left early for many that she did not miss. Indeed, during her last month, January 2022, she was scheduled for eight shifts and failed to show up for any of them, appearing only once without notice for a 4-hour shift on January 9, 2022. Because SunCakes had warned Crouch earlier about these attendance and tardiness issues, it terminated her employment on January 12, 2022.

Crouch claims that while working during that four-month period at the IHOP, her immediate supervisor, Shawn Edwards, propositioned her for sex while the two were at work. She testified, "He asked me if he can come back to my place, and we could possibly f - - k," and she responded, "no," explaining, "I don't involve myself with people at my job . . . as far as me and you having any consensual thing outside of work, its not going to happen." Crouch also stated that Edwards "offer[ed] [her] a ride home on multiple occasions" and that she repeatedly said, "No, I have a ride, and I don't want to see you

2

personally. I don't want to sleep with you." These propositions, as Crouch testified, made her feel "uncomfortable and awkward." Crouch also testified to an occasion when Edwards, in her presence, put another woman on speaker phone to lewdly describe a prior sexual encounter.

Crouch complained about Edwards' conduct to the restaurant's general manager, Audra Causey, who acknowledged that other female employees had made similar complaints. Causey told Crouch that she should give Causey a written statement describing the incidents, and Crouch agreed. Crouch, however, never got around to doing so before her termination.

During her four-month employment, Crouch also complained to Causey that she was hired as a server at $2.13 per hour plus tips but that she was required, at times, to do hostess duties, like filling to-go orders, where she still got paid $2.13 per hour but received no tips. She noted that her low wage as a server could not be justified when working on to-go orders because she did not receive tips for that work. She asked that she be paid the minimum wage of $7.25/hour while working on hostess-related responsibilities. SunCakes management, however, declined her request.

A little more than a year after Crouch's employment at SunCakes was terminated, Crouch filed a complaint in North Carolina state court against SunCakes for unpaid wages related to her hostess duties and for retaliation by terminating her in response to her wage complaints. The Superior Court of Mecklenburg conducted a jury trial, during which Crouch testified as the sole witness. After she testified, the state court granted SunCakes' motion for a directed verdict and dismissed Crouch's state causes of action with prejudice.

3

The court held that there was no triable wage and hour claim because Crouch had stipulated that the total pay she received from SunCakes, including base wage and tips, was in excess of the minimum wage. With regard to her retaliation claim, the court found that Crouch's evidence failed to "rais[e] more than a suspicion, conjecture, guess, surmise or speculation."

Several months after filing her state wage and hour claim, Crouch commenced this action, alleging hostile work environment, discrimination on the basis of sex, and retaliation, and subsequently amended her complaint to include claims for unpaid wages and retaliation under the federal Fair Labor Standards Act.

On SunCakes' motion, the district court ultimately granted SunCakes summary judgment on all of Crouch's claims. On the hostile work environment or sexual harassment claim, the court concluded that Crouch failed to provide any corroborative evidence that Edwards' offensive comments were severe and pervasive conduct. On her sex discrimination claim, the court concluded that Crouch had failed to make a prima facie case, as no reasonable jury could find that her job performance was satisfactory. On her retaliation claim, the court concluded that Crouch had indeed made out a prima facie case but that she failed to meet her burden to show that SunCakes' proffered nondiscriminatory reason for her termination — her absenteeism and tardiness — was pretextual. Finally, on the FLSA claims, the court held that Crouch's claims were barred by the two-year statute of limitations.

From the district court's judgment dated May 2, 2025, Crouch filed this appeal.

4

II

With respect to Crouch's allegation of sexual harassment under Title VII, insofar as it supported her hostile work environment claim, we acknowledge that Edwards' proposals to Crouch for after-work sex were totally unacceptable, as was his playing a lewd telephone call in her presence. While it might be well argued that such conduct was not sufficiently severe or pervasive to amount to illegal sexual harassment, Crouch reasonably claimed that it made her feel "uncomfortable and awkward." To establish credibility as to this characterization, Crouch testified that she contemporaneously told a friend, several coworkers, and the general manager about Edwards' conduct. Yet she failed to provide any corroborating evidence from those sources. As we have explained, "we generally consider self-serving opinions without objective corroboration not significantly probative." *Evans v. Tech. App. & Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *see also Williams v. Giant Food Inc.*, 370 F.3d 423, 433 (4th Cir. 2004) ("merely a self-serving opinion . . . cannot, absent objective corroboration, defeat summary judgment"). This was not a situation where corroborative evidence was unavailable due to the circumstances of the harassment. To be sure, Crouch did testify that she complained to Causey, the restaurant's general manager, but she also acknowledged that the manager told Crouch to give her a statement, which Crouch agreed to do. But, as Crouch acknowledged, she never got around to doing so. As a consequence, there was no contemporaneous written statement. In these circumstances, we conclude that the district court did not err in granting SunCakes summary judgment on this claim.

5

With respect to Crouch's Title VII discrimination claim — whether the discrimination was effected by sexual harassment or animus or however Crouch alleged it — Crouch ultimately failed to demonstrate that SunCakes' non-discriminatory reason for her termination was a pretext. SunCakes terminated Crouch due to her "blatant and ongoing violation of company policy related to absenteeism," and the record supports its claim. As the district court summarized the record, Crouch consistently missed her scheduled shifts, often with little or no notice, and when she did make it to work, she frequently arrived late and left early. The court pointed out that Crouch missed 26 out of 56 total scheduled shifts, and in January, she missed all 8 of her scheduled shifts prior to her termination. Upon SunCakes' production of this legitimate, non-discriminatory reason for its termination of Crouch's employment, the burden shifted to Crouch to establish that the reason given by SunCakes was not the true reason but a pretext for unlawful discrimination. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–05 (1973). Crouch has not produced such evidence. Thus, as the record stands, there is not one scintilla of evidence suggesting that the reason SunCakes terminated Crouch's employment was because of sex.

And as to Crouch's Title VII retaliation claim, Crouch alleged that the termination of her employment was in retaliation for her complaining about Edwards' sexual advances. Again, Crouch did complain to Causey, the restaurant manager, but Causey responded that Crouch should write up a statement, which Crouch agreed to do, but never did. There is no evidence in the record, however, that that exchange was a reason for SunCakes' terminating her employment. *See Boyer-Liberto v. Fountainebleau Corp.*, 786 F.3d 264,

6

281 (4th Cir. 2015) (noting that the plaintiff has the burden of proving a "causal link" between a protected activity and an adverse employment action). And again, there is also no evidence that the reason that SunCakes gave for her termination — absenteeism and tardiness — was pretextual.

Finally, as to Crouch's claims under the FLSA, the district court held that Crouch filed her action more than two years after her action accrued and therefore was barred by the applicable statute of limitations. *See* 29 U.S.C. § 255(a). We can find no error in the court's ruling. Crouch's employment was terminated on January 12, 2022, and she filed her FLSA claim on February 24, 2024.

While the FLSA does extend the statute of limitations to three years if the conduct alleged was "willful," *id*., there is no evidence in this case that any alleged violations were willful as provided by the statute. *See Desmond v. PNGI Charles Town Gaming, L.L.C.*, 630 F.3d 351, 358 (4th Cir. 2011) (noting that the employee has the burden of proving willfulness). Indeed, it appears that there was no violation at all. As the FLSA provides, a tipped employee's wages are sufficient if, between her *base wage and tips*, the employee received total payment that meets the minimum wage. 29 U.S.C. § 203(m)(2)(A). The FLSA's regulations specifically recognize that some tipped employees will work "dual jobs," specifying that a waitress "who spends part of her time cleaning and setting tables, toasting bread, making coffee and occasionally washing dishes or glasses" need not be paid at a separate rate for those associated, but non-tipped responsibilities. 29 C.F.R. § 531.56(e). As the regulation explains, "[s]uch related duties in an occupation that is a tipped occupation need not by themselves be directed toward producing tips." *Id.* Based

on the record before the district court, SunCakes did, in fact, pay Crouch minimum wage — consisting of her base pay and tips — during the entirety of her employment, a fact that Crouch has not controverted.

*    *    *

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED